UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
LAWRENCE SAVOCA,                                  :
            Petitioner,                       :      **OPINION AND ORDER**
                                              :
v.                                                :      16 CV 4465 (VB)
                                              :      03 CR 841-01 (VB)
UNITED STATES OF AMERICA,                         :
            Respondent.                       :
--------------------------------------------------------------x

Briccetti, J.:

       Petitioner Lawrence Savoca moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Savoca asserts that (i) his fifteen-year sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), is invalid under Johnson v. United States, 135 S. Ct. 2551 (2015), and (ii) his ten-year consecutive sentence for discharging a firearm during and in relation to an attempted Hobbs Act robbery, 18 U.S.C. § 924(c), is invalid under United States v. Davis, 139 S. Ct. 2319 (2019).

       For the reasons set forth below, the motion is DENIED and the petition is DISMISSED.

## BACKGROUND

       The papers in support of and in opposition to the motion, and the record of the underlying criminal proceedings, reflect the following:

       In the early morning hours of June 21, 2001, petitioner and his brother Salvatore Savoca planned and executed an armed robbery in Mahopac, New York, in which the brothers Savoca attempted to steal from the owner of a local tavern the bar's evening receipts. During the robbery, Salvatore shot and wounded the bar owner. In 2004, Salvatore pleaded guilty, but Lawrence went to trial and was convicted of conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a); attempted Hobbs Act robbery, 18 U.S.C. §§ 1951(a) and 2; discharging a

1

firearm during a crime of violence, namely the attempted Hobbs Act robbery, 18 U.S.C. §§ 924(c) and 2; and being a felon-in-possession of a firearm, 18 U.S.C. § 922(g)(1).

Prior to sentencing, the Probation Department prepared a presentence investigation report ("PSR") which stated that petitioner had seventeen prior adult convictions, mostly for larceny and stolen property offenses. (PSR ¶¶ 43-79). Among those convictions were three separate felony burglary convictions in 1991 in which petitioner had entered private residences and stolen jewelry and cash. (PSR ¶¶ 72-73, 76-77, 78-79). After serving concurrent jail sentences of eight years to life for these three burglary convictions, petitioner was released on parole. Several days later, he committed the armed robbery of the Mahopac bar owner.

On February 16, 2005, the sentencing court imposed a total term of imprisonment of thirty years: five years on each of the conspiracy and attempted Hobbs Act robbery counts, to run concurrently; ten years on the Section 924(c) count, to run consecutively to the other terms of imprisonment; and fifteen years on the Section 922(g)(1) count, also to run consecutively to the other terms of imprisonment.

The ten-year consecutive sentence on the Section 924(c) count was the mandatory minimum because petitioner had been convicted of discharging a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A)(iii). There was no discussion at sentencing as to whether attempted Hobbs Act robbery was a crime of violence as defined in Section 924(c)(3).

The fifteen-year sentence on the Section 922(g)(1) count was imposed pursuant to the enhanced penalty provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which provides that a person convicted of being a felon-in-possession under Section 922(g) who "has three previous convictions . . . for a violent felony" is subject to a fifteen-year mandatory

minimum. Absent ACCA, the maximum sentence for a violation of Section 922(g)(1) is ten years. "Violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year [that] (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

At sentencing, the parties and the Court discussed the related questions of whether petitioner was a "career offender" under the federal Sentencing Guidelines and whether the fifteen-year mandatory minimum under ACCA applied to him. These questions were related because if petitioner's three prior felony burglary convictions triggered the career offender guideline, they also triggered the ACCA fifteen-year mandatory minimum. Under Section 4B1.1(a) of the applicable 2004 Sentencing Guidelines, petitioner was a career offender if he had at least two prior convictions for a "crime of violence." And under Section 4B1.2(a), "crime of violence" is defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that . . . (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

Thus, at the time of sentencing, "violent felony" under ACCA and "crime of violence" under the career offender guideline both contained a <u>force</u> clause ("has as an element the use, attempted use, or threatened use of physical force against the person of another") and a <u>residual</u> clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another"). In addition, they both contained an <u>enumerated offenses</u> clause, although in slightly

different language—ACCA refers to "burglary," whereas the 2004 career offender guideline referred to "burglary of a dwelling."

Prior to sentencing, the government submitted a sentencing memorandum which reviewed petitioner's criminal history at length and stated that petitioner was "a career criminal in the truest sense of that term." (Zas Decl. Exh. C at 8-9). The sentencing memorandum also stated that "[a]t age 24, the defendant went on a virtual crime spree: he committed and was convicted of one grand larceny and ***three*** residential burglaries. Accordingly, he was sentenced under New York State law as a persistent violent felony offender to a term of eight years to life." (Id. at 9) (emphasis in original). In a footnote, the government added: "Because of its potential for violence, because it robs the victim of a sense of security in the place where he or she should be most secure, and because it violates the most personal space of a victim, the crime of residential burglary is categorized as a violent felony at both state and federal law." (Id. at 9 n.6).

At the sentencing hearing, the government relied on petitioner's three prior residential burglary convictions to argue that he was both a career offender under the Guidelines and subject to the enhanced penalty provision of ACCA. The sentencing court first heard and resolved petitioner's many objections to the PSR. (Zas Decl. Exh. B ("Sent'g Tr.") 6-34). Petitioner did not, however, object to the PSR's description of each of the three burglaries as involving his entry into a private residence. Although petitioner did not object to the existence or underlying circumstances of the three prior burglary convictions, he did argue that the concurrent sentences imposed for the three burglaries should not be counted separately for purposes of calculating his criminal history under the Guidelines. (Sent'g Tr. 20-21). The prosecutor responded that the sentencing court did not need to reach that question: "They don't contest that he has three prior

4

violent felony convictions as a matter of law.  Therefore, he's a career armed offender, given his conviction under 922(g), and the guidelines." (Sent'g Tr. 21).  He continued: "They have not contested that he has been convicted prior to the commission of this offense of three violent felonies.  It's clear that he has been." (Sent'g Tr. 22).  And, in a reference to the mandatory minimum sentences for the Section 924(c) count (ten years) and the Section 922(g)(1) count, as enhanced by ACCA (fifteen years), the prosecutor stated:  "The statutes make it clear . . . that, as a matter of statute and case law, the combined mandatory minimum adds up to 25 years.  That's clear.  That has not been contested by the defense. . . .  And [defense counsel] hasn't raised an argument to me as to why that shouldn't apply." (Sent'g Tr. 22-23).  The prosecutor concluded: "[I]f you've been convicted of three prior violent felonies—and a residential burglary is one—in the past and then you're convicted of 922(g), you are an armed career criminal."  (Sent'g Tr. 23).

Although the government did not explicitly invoke the <u>enumerated</u> <u>offenses</u> clause of ACCA, its repeated reference to petitioner's three prior residential burglary convictions was the basis for the argument that both ACCA ("burglary") and the career offender guideline ("burglary of a dwelling") applied.  Also, neither the sentencing court nor the parties made any reference, explicit or otherwise, to the <u>force</u> or <u>residual</u> clauses of either ACCA or the career offender guideline.  Specifically, there was no discussion of whether burglary has as an element the use, attempted use, or threatened use of physical force, and there was no discussion of whether burglary involves conduct that presents a serious potential risk of physical injury to another. (Sent'g Tr. 20-24).  Instead, after the government relied on the three residential burglary convictions, the Court concluded that petitioner was a career offender under the Guidelines and was also subject to the fifteen-year mandatory minimum under ACCA.  (Sent'g Tr. 51-53).

Petitioner appealed his conviction and sentence. He did not argue that burglary was not a "violent felony" under ACCA. Nor did he argue that attempted Hobbs Act robbery was not a "crime of violence" under Section 924(c). The Second Circuit affirmed and the Supreme Court denied certiorari. United States v. Savoca, 151 F. App'x 28 (2d Cir. Oct. 3, 2005), cert. denied, 546 U.S. 1176 (2006).

Thereafter, petitioner filed his first Section 2255 motion challenging his conviction and sentence. He did not argue that burglary was not a "violent felony" under ACCA or that attempted Hobbs Act robbery was not a "crime of violence" under Section 924(c). The first Section 2255 motion was denied. Savoca v. United States, 2013 WL 10054624 (S.D.N.Y. Aug. 8, 2013).

After the Supreme Court held in Johnson v. United States, 135 S. Ct. 2551 (2015), that ACCA's residual clause was unconstitutionally vague, petitioner timely sought leave from the Second Circuit to a file a second or successive Section 2255 motion. See 28 U.S.C. § 2244(b)(3). After delays occasioned by ongoing litigation over the first Section 2255 motion, the Second Circuit granted petitioner's application.

The instant second Section 2255 motion contains two claims: (i) that petitioner was sentenced under ACCA based on that statute's residual clause definition of "violent felony," found unconstitutional in Johnson, and thus he should be resentenced to no more than ten years' imprisonment on his Section 922(g)(1) felon-in-possession conviction; and (ii) that his Section 924(c) conviction should be vacated because attempted Hobbs Act robbery, the predicate offense, is not a "crime of violence."

**DISCUSSION**

I.       <u>The Gatekeeping Requirements for a Second or Successive Section 2255 Motion</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes stringent gatekeeping requirements for a second or successive motion under Section 2255. As relevant here, a "second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Thus, the petitioner must first seek leave to file the second or successive motion, which the court of appeals can authorize "only if it determines that the application makes a prima facie showing that the application satisfies the requirements of [Section 2244(b)]." 28 U.S.C. § 2244(b)(3)(C). In turn, Section 2244(b) requires that "the applicant [show] that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." <u>Id</u>. § 2244(b)(2)(A).

Second, even if the court of appeals certifies that a petitioner has made such a prima facie showing, the district court must still make an independent assessment of whether the second or successive Section 2255 motion satisfies the requirements of Section 2244(b)(2)(A). Indeed, the "district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4); <u>accord</u> <u>Massey v. United States</u>, 895 F.3d 248, 251 (2d Cir. 2018).

II.      <u>The ACCA Claim</u>

The government argues that petitioner's ACCA claim relies on statutory construction arguments rather than "on a new rule of constitutional law, made retroactive to cases on

7

collateral review by the Supreme Court," 28 U.S.C. § 2244(b)(2)(A), such that it must be dismissed, id. § 2244(b)(4).

The Court agrees.

In Johnson, as noted above, the Supreme Court held that ACCA's residual clause was unconstitutionally vague. Johnson v. United States, 135 S. Ct. at 2563. And the Supreme Court subsequently held that that Johnson announced a new rule of substantive constitutional law that has retroactive effect in cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1265 (2016). But what Johnson did not do was call into question "the remainder of [ACCA's] definition of a violent felony." Johnson v. United States, 135 S. Ct at 2563; see Welch v. United States, 136 S. Ct. at 1268. In other words, Johnson did not invalidate the force clause or the enumerated offenses clause of ACCA.

Therefore, only if the sentencing court imposed the fifteen-year mandatory minimum under ACCA pursuant to the now-invalid residual clause can petitioner show that his claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. See Massey v. United States, 895 F.3d at 252 (petitioner's "claim relies on a new rule of constitutional law only if he was sentenced in violation of that new constitutional rule"). But the only basis articulated by the sentencing court or the government for finding that petitioner's three prior residential burglary convictions constituted violent felonies was the enumerated offenses clause, which explicitly includes "burglary" as a qualifying offense. Indeed, the residual clause is not mentioned anywhere in the record, and at no point did the sentencing court, the government, or the defense discuss or apply it.

Petitioner's arguments to the contrary are not persuasive. Essentially, petitioner argues that the sentencing court must have relied on the residual clause—even though it did not say it was relying on the residual clause—because, under post-Johnson case law interpreting ACCA's force and enumerated offenses clauses, his prior burglary convictions do not qualify as violent felonies under either of those clauses. As such, petitioner relies not on a new rule of constitutional law that was previously unavailable but rather on statutory construction arguments. That being the case, the instant second or successive petition does not satisfy AEDPA's stringent gatekeeping requirements. See Massey v. United States, 895 F.3d at 252 (statutory construction claim cannot be "bootstrapped" to Johnson to satisfy AEDPA's gatekeeping requirements for second or successive Section 2255 motions); Dimott v. United States, 881 F.3d 232, 237-38 (1st Cir. 2018) (rejecting bootstrapping of statutory construction arguments about enumerated offenses clause to a Johnson argument in effort to circumvent AEDPA's timeliness requirement).

Petitioner also attempts to construe a footnote in the government's sentencing memorandum as an invocation of ACCA's residual clause, and thus as a basis for arguing that the sentencing court likely relied on the residual clause to find that the prior burglary convictions constituted violent felonies. (Zas Decl. Exh. B at 9 & n.6). But that footnote makes no reference at all to the residual clause. Instead, it makes the uncontroversial point that residential burglary is considered a violent felony under both state and federal law in light of several factors present in such a burglary, including not only its potential for violence, but also the fact that it robs the victim of a sense of security in the place the victim should feel the most secure, and because it violates the victim's most personal space. Petitioner cherry-picks the phrase "potential for violence" out of the footnote's recitation of various factors and claims that that phrase is an unmistakable reference to the residual clause's use of the language, "serious potential risk of

9

physical injury to another." The Court does not see it that way. First, "potential for violence" is obviously not the same as "potential risk of physical injury to another." More importantly, construed in context, the footnote's reference to burglary's "potential for violence" is a reference to just one of several factors that make burglary such a serious offense.

The only fair reading of the record as a whole is that the government was relying on the enumerated offenses clause, not the residual or force clauses, in its argument that petitioner was ACCA-eligible, both in its sentencing memorandum and at the sentencing hearing itself. In its sentencing memorandum, the government stated that "the defendant is a career criminal in the truest sense of that term," emphasizing that petitioner was convicted of "***three*** residential burglaries." At the sentencing hearing, the prosecutor made repeated references to petitioner's three prior residential burglary convictions as the basis for the argument that both ACCA ("burglary") and the career offender guideline ("burglary of a dwelling") applied. Indeed, in response to a question from the sentencing court, the prosecutor said, "if you've been convicted of three prior violent felonies—and a residential burglary is one—in the past and then you're convicted of 922(g), you are an armed career criminal," after which the sentencing court concluded that petitioner was a career offender under the Guidelines and also an armed career criminal subject to the fifteen-year mandatory minimum under ACCA. The Court agrees with the government that "[i]t strains reason to think that in the face of the Government's reliance on the enumerated offenses clause, and in the absence of any party even raising the residual clause, the sentencing court would instead have relied, sub silentio, on a clause sufficiently amorphous to later be held unconstitutionally vague" in Johnson. (Gov't Br. at 9).

Moreover, contrary to petitioner's argument, at the time of sentencing, there was no controlling case law precluding the sentencing court from finding that petitioner's three burglary

convictions, all of which followed guilty pleas, were violent felonies under ACCA's enumerated offenses clause. In Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court held that "burglary" under ACCA's enumerated offenses clause carries a generic, or commonly understood, meaning, namely, "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime," id. at 599, and that to determine whether an earlier conviction after trial was for generic burglary, a sentencing court could look beyond the statute's language and consider documents such as the charging instrument or the jury instructions. Id. at 602. But Taylor did not address how courts should analyze "nongeneric-burglary" convictions following a guilty plea. That issue was addressed in Shepard v. United States, 544 U.S. 13, 20-21 (2005), decided after petitioner was sentenced, in which the Court set forth a methodology for determining whether the prior guilty plea had "necessarily" rested on the fact identifying the burglary as generic, such as by reference to a plea agreement, transcript of the plea colloquy, or findings of fact adopted by the defendant. And it was not until 2016 that the Supreme Court considered how a burglary statute, like New York's, that "itemize[s] the various places that crime could occur as disjunctive factual scenarios rather than separate elements," should be analyzed. See Mathis v. United States, 136 S. Ct. 2243, 2249 (2016).[1]

Finally, petitioner claims that at the time petitioner was sentenced controlling case law "squarely held that a conviction for New York burglary or attempted burglary—whatever the

---

[1] Under New York law, a person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a "building" with intent to commit a crime, N.Y. Penal Law § 140.20; and is guilty of burglary in the second degree when he commits third degree burglary and either one of several enumerated factors is present or "the building is a dwelling," id. §140.25. "Building" includes, in addition to its ordinary meaning, "any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying business therein, or used as an elementary or secondary school, or an inclosed motor truck, or an inclosed motor truck trailer." Id. § 140.00(2). "Dwelling" is "a building which is usually occupied by a person lodging therein at night." Id. § 140.00(3).

11

degree—qualified as a 'violent felony' under the ACCA's residual clause, not its 'enumerated offenses' clause," citing United States v. Andrello, 9 F.3d 247 (2d Cir. 1993) (Pet. Reply Br. at 6), such that the court "presumably relied" on the residual clause (id. at 9).  Not so.  In Andrello, the question was whether attempted burglary qualified as a violent felony under the residual clause; the court held that it did.  The court was not asked to decide and did not decide whether completed burglary under New York law qualified as "burglary" under the enumerated offenses clause.

In short, considered as a whole, the record indicates that the sentencing court relied on the enumerated offenses clause, not the now-defunct residual clause, in determining that petitioner's three prior residential burglary convictions constituted violent felonies under ACCA.  As such, petitioner has not shown that his ACCA claim—made in a second or successive Section 2255 motion—relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.  Accordingly, the ACCA claim does not satisfy AEDPA's strict gatekeeping requirements and must be dismissed.

III.    The Section 924(c) Claim

Petitioner was convicted of discharging a firearm during and in relation to a crime of violence, namely the attempted Hobbs Act robbery of the bar owner, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  The statute defines a "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," id. § 924(c)(3)(A) (the "force clause"), or "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," id. § 924(c)(3)(B) (the "residual clause").

Petitioner claims that attempted Hobbs Act robbery does not qualify as a crime of violence and, therefore, his conviction under Section 924(c) must be vacated. The government argues that petitioner's claim does not satisfy AEDPA's gatekeeping requirements, and that even if it did, it is without merit.

The Court agrees with the government.

A. The Gatekeeping Requirement

In <u>United States v. Davis</u>, 139 S. Ct. 2319, 2336 (2019), the Supreme Court held that the residual clause in Section 924(c)(3)(B) is unconstitutionally vague, and the parties agree <u>Davis</u> applies retroactively to cases on collateral review under <u>Welch</u>. Petitioner contends the "sole question" is therefore whether attempted Hobbs Act robbery, upon which his 924(c) conviction is based, is a crime of violence under the force clause in Section 924(c)(3)(A). But that is not the sole question. Indeed, because this is a second or successive motion under Section 2255, this Court can only consider that question if petitioner first shows his "claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A).

Petitioner cannot claim he is relying on a new rule of constitutional law if, in order to succeed in arguing that attempted Hobbs Act robbery is not a crime of violence under the residual clause—which is the clause <u>Davis</u> found to be unconstitutional—he must first convince the Court that as a matter of statutory interpretation, attempted Hobbs Act robbery is not a crime of violence under the force clause. This is the point the Second Circuit made clear in <u>Massey v. United States</u>, albeit in the context of an ACCA penalty enhancement. 895 F.3d at 252-53. But in arguing that the "sole question" is whether attempted Hobbs Act robbery is a crime of violence under the force clause, petitioner is attempting to "bootstrap" his non-retroactive

13

statutory construction argument to Davis to attain review for a second or successive motion under Section 2255. Id. at 252.

The Court agrees with the government that "AEDPA's gatekeeping requirement cannot be sidestepped by simply pairing the statutory argument with a Davis argument." (Gov't letter dated Aug. 29, 2019, at 3-4). Accordingly, petitioner's Section 924(c) claim does not satisfy AEDPA's strict gatekeeping requirements and must be dismissed.

B. The Merits

Even if not procedurally barred, petitioner's Section 924(c) claim is without merit.

Although several district judges within the Second Circuit have held that attempted Hobbs Act robbery is not a crime of violence under the force clause, see, e.g., United States v. Culbert, 2020 WL 1849692 (E.D.N.Y. Apr. 13, 2020); Lofton v. United States, 2020 WL 362348 (W.D.N.Y. Jan 22, 2020); United States v. Tucker, 2020 WL 93951 (E.D.N.Y. Jan. 8, 2020), the Second Circuit has not yet ruled on this question, and the Court agrees with those courts within and outside the Circuit that have held to the contrary.

Under the force clause, a crime of violence is a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). To determine whether a particular offense is a crime of violence under the force clause, courts use the so-called "categorical approach": "[W]e evaluate whether the minimum criminal conduct necessary for conviction under a particular statute necessarily involves violence. In doing so, we focus only on the elements of the offense and do not consider the particular facts of the underlying crime." United States v. Hendricks, 921 F.3d 320, 327 (2d Cir. 2019). Thus, here, the question is whether the elements of attempted Hobbs Act robbery necessarily involve physical force.

The Second Circuit has held that completed Hobbs Act robbery is a crime of violence under the force clause. United States v. Hill, 890 F.3d 51, 60 (2d Cir. 2018). And the force clause includes felonies having as an element the "attempted use . . . of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Attempted Hobbs Act robbery is an attempt to commit robbery, as defined in 18 U.S.C. § 1951(b), which involves the taking or obtaining of property "by means of actual or threatened force, or violence, or fear of injury." Because an attempted Hobbs Act robbery thus involves the attempted taking or obtaining of property by means of actual or threatened force, violence, or fear of injury, it necessarily involves physical force and comes within the force clause's definition. Crowder v. United States, 2019 WL 6170417, at *2 (S.D.N.Y. Nov. 20, 2019).

Under federal law, an "attempt" to commit an offense requires a substantial step towards the commission of an offense, coupled with the intent that the offense be completed. See United States v. Thrower, 914 F.3d 770, 776 (2d Cir. 2019). And a "substantial step" is "more than mere preparation." United States v. Anderson, 747 F.3d 51, 73-74 (2d Cir. 2014). Thus the "attempted use" prong of Section 924(c)'s force clause covers any offense that has as an element a substantial step toward using physical force coupled with an intent to use such force. Because any attempt to commit a crime of violence under the force clause necessarily has as an element the attempted use of physical force, every attempt to commit a crime of violence satisfies this standard. And any person who has committed attempted Hobbs Act robbery has taken concrete, directed action with the intent that a robbery take place; as such, he has taken a substantial step toward using force, as robbery requires. See United States v. Farhane, 634 F.3d 127, 148 (2d Cir. 2011) ("a substantial step to commit a robbery must be conduct planned clearly to culminate in that particular harm").

In this regard, the Court agrees with the Eleventh Circuit in United States v. St. Hubert, 909 F.3d 335 (11th Cir. 2018): "[E]ven if the completed substantial step falls short of actual or threatened force, the robber has attempted to use actual or threatened force because he has attempted to commit a crime that would be violent if completed.  Thus, we reject St. Hubert's claim that the substantial step itself in an attempt crime must always involve the actual or threatened use of force for an attempt to commit a violent crime to qualify under" the force clause of Section 924(c).  Id. at 353 (emphasis added); accord, United States v. Ingram, 947 F.3d 1021, 1026 (7th Cir. 2020); Crowder v. United States, 2019 WL 6170417, at *3; Simmons v. United States, 2019 WL 6051443, at *4 (S.D.N.Y. Nov. 15, 2019); United States v. Robinson, 2019 WL 5864135, at *5 (E.D.N.Y. Nov. 8, 2019); United States v. Jefferys, 2019 WL 5103822, at *7-8 (E.D.N.Y. Oct. 11, 2019).

In short, because attempted Hobbs Act robbery is a "crime of violence" within the meaning of the force clause, petitioner was properly convicted of discharging a weapon during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2.

## **CONCLUSION**

Petitioner's motion under 28 U.S.C. § 2255 is DENIED and the petition is DISMISSED.

Because at least some of the issues presented in the instant petition involve unsettled areas of law including issues the Second Circuit has yet to decide, petitioner has shown that jurists of reason could disagree, and has thus made a substantial showing of the denial of a constitutional right.  Accordingly, the Court issues a certificate of appealability.  28 U.S.C. § 2253(c)(2).

The Court also concludes an appeal would be taken in good faith, and in forma pauperis status is granted for the purpose of an appeal.

The Clerk is instructed to close case no. 16 CV 4465.

Dated: May 5, 2020
       White Plains, NY

                                    SO ORDERED:

                                    _____
                                    Vincent L. Briccetti
                                    United States District Judge